Alleit Murray Myers, J.
The court does hereby amend its decision dated December 9,1970 to read as follows:
In this summary holdover proceeding the landlord seeks to evict the tenant from decontrolled property, after expiration of a lease, on the ground that he needs the apartment for his own use.
Petitioner’s entire case consisted of the following evidence:
1) Lease between the parties dated May 31, 1967 for a term from July 1,1967 to May 30,1970.
2) A statement by the owner’s son that his father had a cataract operation and was recuperating.
3) A copy of opinion No. 725 of the Conciliation and Appeals Board ('CAB) dated September 29,1970.
The tenant had filed a complaint with the CAB based upon an alleged violation of section 60 of the Bent Stabilization •Code claiming that the owner refused to offer her a renewal lease. The CAB found that in accordance with the provisions of section 54(b) of the Bent Stabilization Code the owner had established that he sought the apartment, in good faith, for his own use and occupancy and that therefore he need not offer a renewal lease to the tenant. Under section 60 of the code, the CAB has the power to direct a landlord to offer a new lease to the tenant.
All the New York City rent control laws are governed in the first instance by the State Enabling Act (L. 1962, ch. 21). Under that act, the City 'Council is empowered to enact rent control legislation as an emergency arises in the availability of housing.
The Bent Stabilization Law of 1969 (Local Laws, 1969, No. 16, 'City of New York) enacted under that authority, determines *185 the confines within which rent regulations may be adopted by a Bent Stabilization Association. Section YY51-6.0 (subd. c, par. [9]) of that law provides that an owner may refuse to renew a lease where the owner intends to demolish the building; where the owner intends to convert the building to co-operative or condominimum ownership “ and on specified grounds set forth in the code approved by the housing and development administration consistent with the purpose of this law ”. (Emphasis supplied.)
The CAB derives its powers from the Bent Stabilization Law of 1969, paragraph (3) of subdivision b section YY55-6.0, which mandates that in order for a real estate industry stabilization association to be recognized it must establish “ a conciliation and appeals board * * * all to be appointed by the mayor with the approval of the council * * * to receive and act upon complaints from tenants and upon appeals from owners claiming hardship under the levels for fair rent increases adopted under this law ”.
The Bent Stabilization Association was given the power to promulgate rules and regulations within the guidelines set forth in the Bent Stabilization Law, and the Court of Appeals has held that the enactment of that law was a valid exercise of the legislative authority of the city (8200 Realty Corp. v. Lindsay, 27 N Y 2d 124).
Pursuant to the statute, the Beal Estate Industry Stabilization Association of New York City, Inc. adopted a code which was approved by the Housing and Development Administration. A Conciliation and Appeals Board with the power to hear complaints of tenants was established (§ 33 of code). It was under that section that the CAB entertained the complaint of the tenant herein and issued its finding that the owner need not offer the tenant a renewal lease as required by section 60 because he had interposed a valid defense to his actions by satisfying the requirements of section 54(b) of the code.
Section 54(b) of the code provides that the owner shall not be required to offer a renewal lease on the ground that “ The owner seeks in good faith to recover possession of a dwelling unit for his own personal use and occupancy or for the use and occupancy of his immediate family ”.
I find that section 54(b) of the code is consistent with the purpose of the Bent Stabilization Law, is authorized under the last provision of section YY51-6.0 (subd. c, par. [9]) of that law, and is valid.
Nevertheless, petitioners (owners) have failed to meet their burden of proof merely by offering an opinion of the Conciliation *186 and Appeals Board and asking that the court be bound by it in view of section 54(e) of the code which provides that: “ Where an owner refuses to renew pursuant to (a), (b) or (c) of this section, he shall, in any proceeding instituted to remove the tenant in occupancy plead and prove his right to refuse a renewal lease pursuant to the terms and conditions of this Code.” (Emphasis added.)
While section 33 of the code authorizes the CAB “ to receive and act upon complaints of tenants ” when it comes to the issue of an owner’s right to refuse to give a tenant a renewal lease and to dispossess him, the CAB’s jurisdiction is limited by section 54(e) of the code (see Matter of Klein v. Conciliation & Appeals Bd., 64 Misc 2d 329). The apparent conflict between the two sections is resolved by application of the rule of statutory construction that where a specific statute appears in conflict or is incompatible with a general .statute, the specific will govern (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 238; St. Germain v. St. Germain, 25 A D 2d 568).
Section 54(e) must be interpreted to mean that if a landlord refuses to renew a lease because he seeks the premises for owner occupancy, he must institute a summary proceeding and plead and prove his case in court. If a tenant complains to the CAB of a landlord’s refusal to renew a lease, a decision sustaining a section 54(b) defense and rejecting the tenant’s complaint cannot be binding because that issue (owner’s right to refuse renewal lease) can only, be determined by the courts at a time when the owner commences a proceeding to remove the tenant from possession.
Therefore, petitioner failed to make out a prima facie case entitling him to the relief sought. He did not offer proper evidence to substantiate his claim. The court is not bound by a CAB determination of the issues because such a determination is beyond the scope of its jurisdiction as set forth in section 54(e) of the code.
In addition, petitioner failed to satisfy the good faith requirement of section 54(b). Respondent testified that on June 15, 1970 she informed petitioner of the availability of a sublet of a furnished apartment for four months at $140 per month, which he rejected. On August 1, 1970 (the petition herein is dated July 8, 1970) a two or three-room apartment (one flight up) in the subject building became vacant. Instead of taking that apartment, petitioner rented it to a Mr. Clifford. She also pointed out that petitioner’s son occupied a basement apartment in the building. In view of the temporary duration for which the apartment was allegedly needed; the fact that *187 in the interim another apartment became vacant and the fact that all of respondent’s attempts to assist petitioner in his temporary dilemma were summarily rejected, I find that petitioner did not act in good faith (Matter of Eastman v. Berman, 27 A D 2d 914; Matter of Bromberg v. McGoldrick, 281 App. Div. 1038, 282 App. Div. 714, affd. 306 N. Y. 690).
Accordingly, the petition is dismissed.